### 23410. WILLS v. GLUNTS.

ARGUED APRIL 11, 1966—DENIED MAY 5, 1966.

*Robert E. Falligant, Grant, Spears & Duckworth, William G. Grant,* for appellant.

*Emanuel Lewis, Lewis & Javetz,* for appellee.

COOK, Justice. On January 6, 1966, Mrs. Charlotte Wills Glunts brought a petition for the writ of habeas corpus in Chatham Superior Court against her former husband, Benjamin C. Wills. She alleged that on May 8, 1959, she was awarded permanent custody of the two minor sons of the parties in a divorce proceeding; that on December 23, 1965, the children went to their father's home to visit him during the Christmas holidays, and were to return to her home on January 2, 1966, but the father illegally detained them and refused to return them to her.

The defendant admitted that the petitioner had been awarded legal custody of the children, but asserted that there had been a change of circumstances detrimental to the welfare of the children since the date of the custody decree. He prayed that custody be awarded to him.

After hearing evidence, the trial judge continued the custody in the mother and denied the prayer of the father for modification of the custody award. The father filed an appeal from this judgment, and by his enumeration of errors asserts that the trial judge abused his discretion in returning the children to the mother.

The appellee contends that the trial judge had no jurisdiction to consider the allegations of the response with reference to a change in circumstances adversely affecting the welfare of the children, transpiring since the custody decree, because the appellee is a resident of the State of Massachusetts. There is no merit in this contention. *Dwyer v. Krelstein,* 211 Ga. 296 (85 SE2d 432).

The two boys whose custody is in dispute in the present litigation are 11 and 9 years of age. The mother married Jimmy Glunts in 1965, and they live in Milton, Massachusetts. Jimmy Glunts has the custody of his two children by a prior marriage, a girl, 15, and a boy, 13. The mother has custody of her son, 15, by a marriage prior to that with the appellant.

The mother testified that: Her present husband is kind and

good to the Wills boys, and treats them as a father would treat his own children. They live in a house with four bedrooms in Milton, Massachusetts, a suburb of Boston. She is working temporarily, and goes to work at 8 a.m. and returns at 5 p.m. She usually prepares the children's breakfast and always prepares their dinner. She and her husband had one fight and he left the house, but it was a childish argument. They have had several arguments and some disagreements in which the children were involved, but they were not serious and were quickly forgotten.

There was testimony by Dr. E. A. Daneman, a psychiatrist, that: He examined the boys, and found each of them to have superior intelligence for his age. They were extremely nervous and disturbed emotionally. After they had been with their father for two weeks, he again examined them and found them more relaxed. On cross examination, this witness stated that the earlier traumatic experiences of divorce and a broken home could be the cause of the emotional disturbance the children are suffering.

Rabbi Aisenstark testified that: He has been closely associated with the boys during their visits with their father in Savannah, and they have discussed with him their desire to live with their father, and their unhappiness in being compelled to return to their mother's home. On the visits of the boys with their father he noted that on their first arrival they appeared to be highly nervous and upset, but after being in Savannah for a while, they seemed happy and more relaxed.

Mrs. Joseph Mendel, who has taught the boys music while they were in Savannah during the summer months since 1963, testified that when the children would first come to Savannah, they were nervous and tense, but this nervousness and tension would visibly decrease during the summer.

The older boy testified at the hearing that: He usually had to prepare his own breakfast, and sometimes had to prepare his own dinner, when at his mother's home. There were frequent fights between the children of his stepfather and his brother and himself; and his mother and stepfather generally got into the fights too. His stepfather threatened to get a divorce from his mother at one time when she "took up" for his brother and him.

He does not want to go back to his mother's home, and wants to stay in Savannah with his father.

Dr. Edwin C. Shepherd, a specialist in pediatrics, testified that: He examined the older boy in April, 1965, and his weight was 95 pounds. The boy had a speech defect, aggravated by a problem of tongue thrusting, which appeared to be the result of nervous tension. He again examined the older boy on September 9, 1965, and at that time his weight was 112 pounds, his speech was noticeably improved, and he appeared in good health and very happy. He next examined the older boy on December 24, 1965, and found that he had lost 13 pounds during the period he was with his mother. In examinations of the younger boy he had found a similar pattern of weight gain during the time the boy stayed with his father, and weight loss while with his mother.

Dr. William Weichselbaum, Jr., a specialist in orthodontics, testified that: He examined the boys in August, 1963. The older boy had a tongue thrusting problem, he appeared tense and nervous, and had a noticeable speech defect, which was apparently due to emotional upset. He appeared more relaxed when the witness examined his teeth later in the summer, after he had been in Savannah for a while. On January 3, 1966, he again examined both boys, and observed an improvement in the older boy's speech.

Dr. J. J. Cleckley, a psychiatrist, testified that: He had examined the boys and found them exceptionally intelligent. They exhibited extreme disturbance at the suggestion of returning to their mother's home, and expressed bitterness and antagonism toward their mother and stepfather. The older boy's anxiety about having to return to his mother's home is manifested by extreme tenseness, the biting of his nails, and a marked increase in a slight speech impediment.

Dr. Benjamin C. Wills, the father, testified that: When the boys come to his home from their mother's home, they are extremely nervous, tense, and upset. The younger boy has a stomach problem as a result of this upset condition, and the older boy has a tongue thrusting habit which increases his speech impediment. The mental condition of both boys improves rapidly after they remain in Savannah for a short time, and they regain

their normal weight. He always has difficulty in persuading the boys to return to their mother after they have been visiting him. They complain that they do not receive sufficient food, have to prepare their own breakfast, and frequently do not have supper unless they prepare it themselves. He owns his own home in Savannah, and has a cook and a maid. He lives by himself; his mother and unmarried sister live near his home. The boys live with him while in Savannah, and also spend some time with his mother and sister. He does not claim that the mother has changed since the decree awarding her custody of the children.

Jimmy Glunts, the husband of the mother, testified that: He considers his wife an excellent mother for her boys and his children. She is a kind, considerate, and loving parent. He is very fond of the Wills boys, and often plays with them. He has never abused the boys, and treats them as his own children. There have been arguments in his home about the care and correction of the children, but these are never serious, just normal family differences. It was necessary for the Wills boys to reduce, because they were overweight, each time they returned to their mother's home. He denies that their diet was insufficient or that they lost weight because they did not get enough to eat. He admits that some of the fights and arguments in the family occurred as a result of the different parentage of the children.

"While proof of changed conditions and that the child's welfare will be protected by changing custody will authorize a judgment to that effect . . , yet, where the evidence does not demand a finding to that effect, the matter is left to the discretion of the trial judge." *Blackstock v. Blackstock*, 208 Ga. 837 (69 SE2d 770). It is the province of the trial judge to weigh the evidence and give credence to the version that appears to him most plausible. *Strickland v. Long*, 216 Ga. 717, 720 (119 SE2d 561). The testimony of a child eleven years of age as to his choice of the person with whom he desires to live can properly be considered by the trial judge, but it is not controlling on his judgment. *Raily v. Smith*, 202 Ga. 185, 189 (42 SE2d 491).

We can not say that the evidence in the present case demanded a finding that the welfare and best interest of the minor children required a change in custody. The mother has had legal custody

of the children since the divorce decree in 1959. The father relies mainly on the evidence of friction in the home of the mother since her remarriage, the weight loss of the children while they are with their mother, and their nervousness when they first come to visit him. Some of the testimony in regard to the nervousness of the boys when they arrived in Savannah to visit their father, and the relaxation of their tensions after they had been with him for some time, related to a time prior to the remarriage of the mother. One of the witnesses for the father admitted that the emotional disturbances of the children could relate back to the separation and divorce of their parents.

The trial judge did not abuse the discretion vested in him in returning the boys to the person having their legal custody. *Madison v. Montgomery,* 206 Ga. 199 (56 SE2d 292); *Hicks v. Buffington,* 209 Ga. 719 (75 SE2d 560); *Slade v. Slade,* 212 Ga. 758 (95 SE2d 680); *Adams v. Heffernan,* 217 Ga. 404 (122 SE2d 735); *Floyd v. Floyd,* 218 Ga. 606 (129 SE2d 786); *Mallette v. Mallette,* 220 Ga. 401 (139 SE2d 322).

*Judgment affirmed. All the Justices concur.*